**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

JEFFREY ROBERT FLESNER; MONICA FLESNER; GAEANN WEVER; ELAINE MCCOY; KARRI SUE MEACHUM; RHONDA JOHNSON; NANCY UHL; DARCI PLUMB; VIRGINIA JACKSON; SARAH RUMBAUGH; JOVASIA SIERRA SPIKES; GLORIA TUIN, individually,

**Plaintiffs**,

vs.

**AMERICAN CONTRACT SYSTEMS**
11600 Adelmo Lane Fort Myers, FL; 7802 E Telecom Parkway, Temple Terrace, Florida 33637; 85 Shaffer Park Drive Tiffin, Ohio; 1601 SE Gateway Drive, Suite 120 Grimes, Iowa; 7702 Parnell St Houston, Texas; 4040 Jackson Pointe Court, Building 4000 Zelienople, Pennsylvania,

And

**JOHN DOE**
A fictitious designation pursuant to Pa. R. Civ. P. 2005 for any company, entity, corporation, LLC, fictitious name, or person whose name, identity and/or actions) are presently unknown to plaintiff but whose wrongful, reckless, and/or negligent misconduct, related to emissions of ethylene oxide from the following AMERICAN CONTRACT SYSTEMS facilities: 11600 Adelmo Lane Fort Myers, FL; 7802 E Telecom Parkway, Temple Terrace, Florida 33637; 85 Shaffer Park Drive Tiffin, Ohio; 1601 SE Gateway Drive, Suite 120 Grimes, Iowa; 7702 Parnell St Houston, Texas; 4040 Jackson Pointe Court, Building 4000 Zelienople, Pennsylvania caused harm, injuries, and/or damages to the plaintiff in this action.

**Defendants**.

Case No. _____

Removed from:

First Judicial District of Pennsylvania Court of Common Pleas of Philadelphia County

**DEFENDANT AMERICAN CONTRACT SYSTEMS, INC.'S**
**NOTICE OF REMOVAL**

1

Defendant American Contract Systems, Inc. ("ACS"), by filing this Notice of Removal and related papers, removes this lawsuit from the First Judicial District of Pennsylvania, Court of Common Pleas of Philadelphia County to this Court pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453 (and any other applicable laws).

## I.    FACTUAL AND PROCEDURAL BACKGROUND

1.    Twelve plaintiffs—Jeffrey Robert Flesner, Monica Flesner, Gaenn Weaver, Elaine McCoy, Karri Sue Meachum, Rhonda Johnson, Nancy Uhl, Darci Plumb, Virginia Jackson, Sarah Rumbaugh, Jovasia Sierra Spikes, and Gloria Tuin—commenced this class action in the First Judicial District of Pennsylvania, Court of Common Pleas of Philadelphia County on June 12, 2025, by filing a Complaint against Defendant American Contract Systems, Inc. ("ACS") and fictitious defendant John Doe, captioned *Jeffrey Robert Flesner v. American Contract Systems, Inc.*, No. 250601472 (the "State Court Action"). A copy of the Complaint and any other papers filed in the State Court Action are attached collectively as Exhibit A.

2.    The Complaint asserts negligence, strict liability, public nuisance, fraud-based, civil conspiracy, and medical monitoring claims and violations of the Pennsylvania Constitution related to ACS's medical sterilization operations in Fort Myers, Florida; Grimes, Iowa; Houston, Texas; Tampa; Florida; Tiffin, Ohio; and Zelienople, Pennsylvania. Compl. ¶¶ 1-3, pp. 23-51.

3.    The named plaintiffs and the purported class members filed this class action "on their own behalf and on behalf of all other persons similarly situated as members" of three subclasses pursuant to Pennsylvania Rule of Civil Procedure 1702. *Id*. ¶ 206.

    a.    The Bodily Injury Class purportedly consists of "[a]ll residents of Fort Myers, Florida; Temple Terrace, Florida; Tiffin, Ohio; Grimes, Iowa; Houston, Texas; and Zelienople, Pennsylvania and surrounding communities" who assert individual personal injury claims related to ACS's sterilization operations. *Id*. ¶¶ 206(a), 22-29. The Bodily Injury Class alleges that they "have been exposed to the toxic contaminants and hazardous emissions, including but not limited to Ethylene Oxide ('EtO')" emitted from ACS's sterilization operations, and as a

result, they allegedly "have suffered bodily injuries, including but not limited to cancers, neurological disorders, reproductive harm, or other serious health conditions." *Id*.

      b.     The Property Value Damage Class purportedly consists of "[a]ll owners of real property in Fort Myers, Florida; Temple Terrace, Florida; Tiffin, Ohio, Grimes, Iowa; Houston, Texas; and Zelienople, Pennsylvania, and surrounding communities" who assert personal injury and/or property damages claims related to ACS's sterilization operations. *Id*. ¶¶ 206(c), 11-14, 17-19. The Property Value Damage Class alleges that they "were personally exposed and continues [sic] to be exposed to hazardous and toxic substances, contaminants, and pollutants," emitted from ACS's medical sterilization operations, and as a result, they allegedly suffered harm including Multiple Myeloma, Lung Cancer, and Breast Cancer, and their "property value has been diminished due to the known or perceived contamination in the area, and/or stigmatization of property." *Id*.

      c.     The Medical Monitoring Class purportedly consists of "[a]ll residents of Allentown, Pennsylvania and surrounding communities" who assert medical monitoring claims related to ACS's sterilization operations.[1] *Id*. ¶¶ 206(e), 30-31. The Medical Monitoring Class alleges that they "have been exposed to the toxic contaminants and hazardous emissions, including but not limited to Ethylene Oxide ('EtO')" emitted from ACS's sterilization operations, and they "seek to establish medical monitoring as 'reasonably anticipated' consequential damages resulting from their exposure." *Id*. ¶¶ 206(a), (e).

## II.    <u>GROUNDS FOR REMOVAL</u>

4.     ACS removes this action pursuant to the Federal Removal Statute (28 U.S.C. § 1441) and the Class Action Fairness Act ("CAFA") (28 U.S.C. § 1332(d)).

---

[1] While the Complaint identifies the Allentown area for this subclass, the Complaint does not allege the existence of any ACS facility in the vicinity. Rather, the Complaint identifies only one Pennsylvania facility, located hundreds of miles west in Zelienople. Compl. ¶ 71. ACS reserves its right to seek appropriate relief, including dismissal of these claims.

5.      The Removal Statute allows a defendant to remove "any civil action brought in a State court" based on diversity jurisdiction. 28 U.S.C. § 1441(a). Diversity jurisdiction exists here because: (1) there is complete diversity between the parties, and (2) the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a).

6.      CAFA gives federal district courts original jurisdiction over a "class action" in which (1) the number of putative class members exceeds 100; (2) the amount-in-controversy exceeds $5,000,000; and (3) there is at least minimal diversity. *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 84-85 (2014) (citing 28 U.S.C. § 1332(d)). The Complaint demonstrates that all these requirements are satisfied. Moreover, this action meets CAFA's definition of a "class action" because it was filed under a "State statute . . . authorizing an action to be brought by [one] or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B); *see* Compl. ¶ 206 (citing Pa.R.Civ.P. 1702).

### III.    THIS COURT HAS TRADITIONAL DIVERSITY JURISDICTION UNDER THE FEDERAL REMOVAL STATUTE.

**A.    Complete Diversity Exists Between the Named Parties.**

7.      For purposes of diversity jurisdiction, an individual is a citizen of the state where they are domiciled, *see Washington v. Hovensa LLC,* 652 F.3d 340, 344 (3d Cir. 2011), while a corporation is a citizen of the state where it is incorporated and the state where it maintains its principal place of business. 28 U.S.C. § 1332(c)(1). To evaluate complete diversity, the Court considers only the citizenship of the named plaintiffs. *See Devlin v. Scardelletti,* 536 U.S. 1, 10 (2002) ("nonnamed class members cannot defeat complete diversity"). Moreover, to assess citizenship, courts may examine materials beyond the pleadings, including those attached to a notice of removal. *Gosch v. Int'l Chapter of Horseshoers & Equine Trades, Loc. 947*, 200 F. Supp. 3d 484, 491 (M.D. Pa. 2016) (quoting *Schulman v. MyWebGrocer, Inc.*, No. 14-CV-7252 ENV RML, 2015 WL 3447224, at *1 (E.D.N.Y. May 28, 2015)).

8.      As detailed below, the named plaintiffs and ACS are completely diverse. Plaintiffs are citizens of Florida, Ohio, Pennsylvania, Iowa, and Texas. Compl. ¶¶ 12, 16-17, 22, 25-26, 29,

33, 36-37, 40, 41, 44-45, 48-49, 52-53, 56-57, 60-61, 68, 206(c). ACS is, and was at the time the State Court Action was filed, a corporation organized and incorporated under the laws of Minnesota, where it maintains its principal place of business. *See id*. ¶ 68; Declaration of Philip Fleischhacker ("Fleischhacker Decl.") ¶ 6-8; *see, e.g.*, *Dent v. Amresorts, L.P.*, No. CV 24-6354, 2025 WL 300604, at *2 (E.D. Pa. Jan. 24, 2025) (courts may consider declarations in support of a notice of removal to evaluate a corporation's citizenship). Finally, the citizenship of the fictitious John Doe defendant is ignored for evaluating diversity jurisdiction. 28 U.S.C. § 1441(b)(1) ("In determining whether a civil action is removable on the basis of jurisdiction under section 1332(a) of this title, the citizenship of defendants sued under fictitious names shall be disregarded."). Accordingly, complete diversity exists between the named parties.

9.      Plaintiffs Jeffrey and Monica Flesner currently live in Fort Myers, Florida, where they have been domiciled for the past twenty-six years. *See* Compl. ¶¶ 12, 16-17. They have lived "in the vicinity" of ACS's Fort Myer's operations since 1999. *Id.* They are also the proposed class representative for the Property Value Damage Class, alleging they are "owners of real property" in proximity to ACS's sterilization operations in Fort Myers, Florida. *See id*. ¶ 206(c-d). Voter registration records obtained from the Florida Secretary of State indicate that plaintiffs Jeffrey and Monica Flesner are currently registered in the state of Florida. Exs. B, C. Based on these allegations, Plaintiffs Jeffrey and Monica Flesner are citizens of Florida. *See Munye v. Roadrunner Servs., LLC*, No. 1:24-CV-01596, 2025 WL 43562, at *4-5 (M.D. Pa. Jan. 7, 2025) (examining voting registration status to establish citizenship).

10.      Plaintiff Elaine McCoy currently lives in Tiffin, Ohio, where she has been domiciled for the last thirty-six years. *See* Compl. ¶ 22, 25. Plaintiff McCoy alleges that since 1989, she has lived "in the vicinity of [] and/or contamination emanating or migrating from" ACS's sterilization operations in Tiffin, Ohio and "continues to reside within the areas impacted by the [c]ontaminants." *Id*. ¶¶ 22, 25. Plaintiff McCoy's voter registration status obtained from the Ohio Secretary of State indicates that she is currently registered in the state of Ohio. Ex. D. Based on these allegations, plaintiff Elaine McCoy is a citizen of Ohio. *See Munye*, 2025 WL 43562, at *4-5.

11.     Plaintiff Sarah Rumbaugh currently lives in Evans City, Pennsylvania, where she has been domiciled for the last seven years. *See* Compl. ¶ 26. Plaintiff Rumbaugh alleges that since 2014, she has lived "in the vicinity of [] and/or contamination emanating or migrating from" ACS's sterilization operations in Zelienople, Pennsylvania and "continues to reside within the areas and [sic] impacted by the [c]ontaminants." *Id*. ¶¶ 26, 29. Plaintiff Rumbaugh's voter registration status obtained from the Pennsylvania Secretary of State indicates that she is currently registered in the state of Pennsylvania. Ex. E. Based on these allegations, plaintiff Sarah Rumbaugh is a citizen of Pennsylvania. *Munye*, 2025 WL 43562, at *4-5.

12.     Plaintiff Gaenn Wever currently lives in Fort Myers, Florida, where she has been domiciled for the past twenty-three years. *See* Compl. ¶ 33. Plaintiff Wever alleges that since 2002, she has lived "in the vicinity of [] and/or contamination emanating from or migrating from" ACS's sterilization operations in Fort Myers, Florida and "continues to reside within the areas impacted by the [c]ontaminants." *Id*. ¶¶ 33, 36. Plaintiff Wever's voter registration status obtained from the Florida Secretary of State indicates that she is currently registered in the state of Florida. Ex. F. Based on these allegations, plaintiff Gaenn Wever is a citizen of Florida. *See Munye*, 2025 WL 43562, at *4-5.

13.     Plaintiff Jovasia Sierra Spikes currently lives in Fort Myers, Florida, where she has been domiciled for the past seven years. *See* Compl. ¶ 37. Plaintiff Spikes alleges that since 2018, she has lived "in the vicinity of [] and/or contamination emanating from or migrating from" ACS's sterilization operations in Fort Myers, Florida and "continues to reside within the areas impacted by the [c]ontaminants." *Id*. ¶¶ 37, 40. Plaintiff Spike's voter registration status obtained from the Florida Secretary of State indicates that she is currently registered in the state of Florida. Ex. G. Based on these allegations, plaintiff Jovasia Sierra Spikes is a citizen of Florida. *See Munye*, 2025 WL 43562, at *4-5.

14.     Plaintiff Gloria Tuin currently lives in Tampa, Florida, where she has been domiciled for the past three years. *See* Compl. ¶ 41. Plaintiff Tuin alleges that since 2022, she has lived "in the vicinity of [] and/or contamination emanating from or migrating from" ACS's

6

sterilization operations in Temple Terrace, Florida and "continues to reside within the areas impacted by the [c]ontaminants." *Id*. ¶¶ 41, 44. Plaintiff Tuin's voter registration status obtained from the Florida Secretary of State indicates that she is currently registered in the state of Florida. Although her voting status is inactive, she remains eligible to vote in Florida. Ex. H. Additionally, a public records search indicates that plaintiff Tuin maintains a Florida driver's license. Ex. I. Based on these allegations, plaintiff Gloria Tuin is a citizen of Florida. *See Munye*, 2025 WL 43562, at *4-5 (examining driver's license to establish citizenship).

15.    Plaintiff Karri Sue Meacham currently lives in Tiffin, Ohio, where she has been domiciled for the past six years. *See* Compl. ¶ 45. Plaintiff Meacham alleges that since 2019, she has lived "in the vicinity of [] and/or contamination emanating from or migrating from" ACS's sterilization operations in Tiffin, Ohio and "continues to reside within the areas impacted by the [c]ontaminants." *Id*. ¶¶ 45, 48. Plaintiff Meacham's voter registration status obtained from the Ohio Secretary of State indicates that she is currently registered in the state of Ohio. Ex. J. Based on these allegations, plaintiff Meacham is a citizen of Ohio. *See Munye*, 2025 WL 43562, at *4-5.

16.    Plaintiff Rhonda Johnson currently lives in Johnston, Iowa, where she has been domiciled for the past twenty-four years. *See* Compl. ¶ 49. Plaintiff Johnson alleges that since 2001, she has lived "in the vicinity of [] and/or contamination emanating from or migrating from" ACS's sterilization operations in Johnston, Iowa and "continues to reside within the areas impacted by the [c]ontaminants." *Id*. ¶¶ 49, 52. Plaintiff Johnson's voter registration status obtained from the Iowa Secretary of State indicates that she is currently registered in the state of Iowa. Ex. K. Based on these allegations, plaintiff Rhonda Johnson is a citizen of Iowa. *See Munye*, 2025 WL 43562, at *4-5.

17.    Plaintiff Nancy Uhl currently lives in Urbandale, Iowa, where she has been domiciled for the past eight years. *See* Compl. ¶ 53. Plaintiff Uhl alleges that since 2017, she has lived "in the vicinity of [] and/or contamination emanating from or migrating from" ACS's sterilization operations in Urbandale, Iowa and "continues to reside within the areas impacted by the [c]ontaminants." *Id*. ¶¶ 53, 56. Plaintiff Uhl's voter registration status obtained from the Iowa

Secretary of State indicates that she is currently registered in the state of Iowa. Ex. L. Based on these allegations, plaintiff Uhl is a citizen of Iowa. *See Munye*, 2025 WL 43562, at *4-5.

18.    Plaintiff Darci Plumb currently lives in Urbandale, Iowa, where she has been domiciled for the last five years. *See* Compl. ¶ 57. Plaintiff Plumb alleges that since 2020, she has lived "in the vicinity of [] and/or contamination emanating from or migrating from" ACS's sterilization operations in Urbandale, Iowa and "continues to reside within the areas impacted by the [c]ontaminants." *Id*. ¶¶ 57, 60. Plaintiff Plumb's voter registration status obtained from the Iowa Secretary of State indicates that she is currently registered in the state of Iowa. Ex. M. Based on these allegations, plaintiff Plumb is a citizen of Iowa. *See Munye*, 2025 WL 43562, at *4-5.

19.    Plaintiff Virginia Jackson currently lives in Texas, where she is domiciled. *See* Compl. ¶ 61. Voter registration records obtained from the Texas Secretary of State indicate that plaintiff Jackson has been registered in the state of Texas since 2022, and her registration is active. Ex. N. Based on these allegations, plaintiff Jackson is a citizen of Texas. *See Munye*, 2025 WL 43562, at *4-5.

20.    ACS is incorporated in the state of Minnesota. Compl. ¶ 68; Fleischhacker Decl. ¶ 6; Ex. O.[2] Moreover, although the Complaint alleges that ACS's principal place of business is located at 10900 Nuckols Road Suite 400, Glenn Allen, Virginia, 23060, Compl. ¶ 68, that address is simply ACS's mailing address. Fleischhacker Decl. ¶ 7. ACS's sole headquarters is located at 4801 West 81st Street Suite 110, Bloomington, Minnesota 55437. *Id*. ¶ 8; *see Hertz Corp. v. Friend*, 559 U.S. 77, 92-93, 97 (2010) (principal place of business is where a corporation's "high level officers direct, control, and coordinate the corporation's activities," not an address used as a "mail drop box"); *see also Gaete v. Arctic Glacier Premium Ice*, No. 24-CV-1396, 2025 WL 642092, at *3-4 (E.D. Pa. Feb. 27, 2025) (denying motion for remand because mailing address did

---

[2] ACS's Articles of Incorporation obtained from the Minnesota Secretary of State are attached as Exhibit O. The Court may take judicial notice of this document because it is a public record. *See, e.g., Nguyen v. Pittsburgh Transp. Grp.*, No. CV 21-63, 2021 WL 5323904, at *1 n.1 (W.D. Pa. Jan. 28, 2021) (taking judicial notice of corporate registration documents), *report and recommendation adopted*, No. 2:21CV63, 2021 WL 5323914 (W.D. Pa. Mar. 11, 2021).

not constitute corporate defendant's principal place of business). Accordingly, ACS is solely a Minnesota citizen.[3]

21.    The Court cannot consider the citizenship of a fictitious John Doe defendant for evaluating diversity jurisdiction. 28 U.S.C. § 1441(b)(1); *see, e.g.*, *Hennix v. Belfor USA Grp., Inc.*, No. CV 22-1473-KSM, 2022 WL 3691020, at *2 (E.D. Pa. Aug. 25, 2022) ("the Court cannot consider the citizenship of the John Doe Defendants in determining whether this case was appropriately removed"); *Hereford v. Broomall Operating Co. LP*, 575 F. Supp. 3d 558, 562 (E.D. Pa. 2021) (disregarding Doe defendants "at the outset" when evaluating citizenship).

22.    In sum, the plaintiffs are citizens of Florida, Ohio, Pennsylvania, Iowa, and Texas, and Defendant ACS is a Minnesota citizen. Because no plaintiff is a citizen of the same state as Defendant ACS, there is complete diversity. 28 U.S.C. § 1332.

**B.    The Amount-in-Controversy is Satisfied.**

23.    Diversity jurisdiction also requires that the claims of each named plaintiff exceed $75,000. *See, e.g.*, *Creasey v. Hydro Extrusion USA, LLC*, No. CV 24-6458, 2025 WL 28242, at *1 (E.D. Pa. Jan. 3, 2025) (citing *Packard v. Provident Nat'l Bank*, 994 F.2d 1039, 1045 (3d Cir. 1993) and *Snyder v. Harris*, 394 U.S. 332, 336-38 (1969)); *Papurello v. State Farm Fire & Cas. Co.*, 144 F. Supp. 3d 746, 753 (W.D. Pa. 2015) (denying plaintiffs' motion for remand where defendant established traditional § 1332(a)(1) diversity jurisdiction with respect to named plaintiffs' claims).

24.    Where, as here, the jurisdictional amount is not alleged, "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart*, 574 U.S. at 89 (citing 28 U.S.C. § 1446(a)). "[T]he amount in controversy is not measured by the low end of an open-ended claim, but rather by a reasonable reading of the value of the rights being litigated." *Angus v. Shiley Inc.*, 989 F.2d 142, 146 (3d Cir.

---

[3] Even assuming ACS is a citizen of Virginia, there would still be complete diversity between the parties.

1993). Remand is only proper "if it appears to a legal certainty that the plaintiff *cannot* recover the jurisdictional amount." *Frederico v. Home Depot*, 507 F.3d 188, 197 (3d Cir. 2007).

25.    It is widely recognized that personal injury claims facially meet the $75,000 jurisdictional threshold. *See, e.g.*, *Marie v. Sears Auto Repair Ctr.*, No. 10-CV-6535, 2011 WL 198465, at *3 (E.D. Pa. Jan. 20, 2011) (finding "a jury could reasonably award more than $75,000.00 in damages" where the plaintiff sought damages for past and future medical expenses in a personal injury action).

26.    Individual plaintiffs in personal injury cases involving toxic chemicals, including ethylene oxide, routinely seek compensatory and punitive damages well in excess of the jurisdictional amount of $75,000. *E.g.*, *Mistrial Declared On Punitive Damages in Bard Cancer Case*, Law360 (May 6, 2025), https://www.law360.com/articles/2335658 (jury awarding $20 million in compensatory damages in personal injury action alleging ethylene oxide exposure in personal injury action alleging ethylene oxide exposure); *Colo. Jury Rejects Claims Sterilization Co. Caused Cancer*, Law360 (Mar. 14, 2025), https://www.law360.com/articles/2311034 (plaintiffs alleged $217 million for physical impairment, $7.5 for past and future medical expenses, plus punitive damages in personal injury action alleging ethylene oxide exposure).[4] The named plaintiffs' demands for attorney's fees, punitive damages, and damages for "future expenses for medical monitoring" also demonstrate that the amount-in-controversy has been satisfied. Compl. ¶¶ 65, 201, pp. 51-52; *see, e.g.*, *Frederico*, 507 F.3d at 199 (complaint satisfied jurisdictional threshold based on demand for attorney's fees); *Huber v. Taylor*, 532 F.3d 237, 244 (3d Cir. 2008) (same, punitive damages); *Anthony v. Small Tube Mfg. Corp.*, 535 F. Supp. 2d 506, 516 (E.D. Pa. 2007) (same, medical monitoring damages).

27.    When calculating the amount in controversy, courts "must [] consider attorney's fees." *Frederico*, 507 F.3d at 199; *Thach v. State Farm Fire & Cas. Co.*, No. CV 19-5050, 2020

---

[4] Personal injury actions involving ethylene oxide have included awards of punitive damages, and courts generally consider punitive damages when evaluating whether the amount-in-controversy requirement has been satisfied. *See, e.g.*, *Huber v. Taylor*, 532 F.3d 237, 244 (3d Cir. 2008).

WL 3892964, at *3 (E.D. Pa. July 10, 2020) (denying motion to remand based in part on plaintiff's ability to potentially recover attorney's fees).

28.    In addition, courts consider medical monitoring damages when evaluating the jurisdictional threshold. *E.g.*, *Anthony*, 535 F. Supp. 2d at 516 (medical monitoring damages in a toxic tort case "if proven, would likely meet or exceed $5,000,000, exclusive of interests or costs"); *see also In re: Incretin Mimetics Prods. Liab. Litig.*, No. 13MD2452 AJB (MDD), 2015 WL 11658714, at *4 (S.D. Cal. Mar. 16, 2015) (finding it is "facially apparent" that the jurisdictional threshold was satisfied where plaintiffs sought past and future compensatory damages, medical expenses, loss of earnings, and future medical monitoring costs).

29.    It is clear from the face of the pleadings that the individual claims of the named plaintiffs satisfy the amount-in-controversy requirement. The Complaint alleges that each named plaintiff was "personally exposed and continues to be exposed to hazardous and toxic substances, contaminants, and pollutants" from ACS's sterilization operations "via ingestion, inhalation, and or/dermal contact" with the alleged pollutants and that plaintiffs "have unknowingly been exposed to carcinogenic [ethylene oxide] for decades." *Id*. ¶¶ 11, 83, 92, 102. Due to this alleged exposure, the named plaintiffs allege they "have suffered bodily injuries, including but not limited to cancers, neurological disorders, reproductive harm, or other serious health conditions." *Id*. ¶ 206(a). Specifically, all twelve named plaintiffs allege their injuries include, but are not limited to, cancer (which they identify as Multiple Myeloma, Lung Cancer, Breast Cancer, Leukemia, or Non-Hodgkin's Lymphoma). *Id*. ¶¶ 12, 17, 19, 22, 24, 26, 28, 33, 35, 37, 39, 43, 45, 46, 49, 51, 53, 55, 57, 59, and 61.

30.    Plaintiffs seek nominal and compensatory damages "for physical injury, property diminution, loss of use and enjoyment, and other economic and non-economic losses;" punitive damages; "attorneys' fees, costs, and litigation expenses;" "[a]n award of prejudgment interest on all amounts awarded;" consequential damages to "fund[] [] a comprehensive medical monitoring program for the Medical Monitoring Class, including court-supervised diagnostic testing, surveillance, and treatment access" and other equitable relief. *Id*. pp. 51-52.

11

31.     "Each and every one of the Plaintiffs" allege that they "will incur future expenses for medical monitoring and, as a result, seek payment of their related medical expenses as an element of the consequential damages." *Id*. ¶ 201. "In order to compensate Plaintiffs . . ., each and every Plaintiff" alleges they seek, "among other things," damages for "past and future cost[s] of obtaining necessary medical care, toxicological examinations and diagnoses, and any other medical monitoring necessary in order to ascertain and treat the nature and extent of the[ir] injuries." *Id*. ¶ 202.

32.     Based on the above, it is facially apparent from the Complaint that each named plaintiff seeks damages well in excess of $75,000, satisfying the jurisdictional amount-in-controversy requirement under 28 U.S.C. § 1332.

## IV.    THIS COURT HAS ORIGINAL CAFA JURISDICTION.

### A.    There is Minimal Diversity.

33.     CAFA provides federal jurisdiction where "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A). As noted in paragraphs 8-22, there is complete diversity between all named plaintiffs and ACS. Thus, CAFA's minimal diversity requirement is satisfied.

### B.    There are More Than 100 Putative Class Members.

34.     Removal is proper where "the number of members of all proposed plaintiff classes in the aggregate" exceeds 100. *See* 28 U.S.C. § 1332(d)(2), (5)(b). The Complaint defines the purported Bodily Injury Class as individuals who "have resided, worked, or attended school within approximately five miles or less from" ACS's sterilization operations in Grimes, Iowa; Fort Myers, Florida; Temple Terrace, Florida; Tiffin, Ohio; Houston, Texas; and Zelienople, Pennsylvania "for a significant amount of time while" ACS "emitt[ed] unsafe and hazardous levels of [ethylene oxide] into the air."[5] *See* Compl. ¶ 77. According to the U.S. Environmental Protection Agency's

---

[5] The Complaint defines the purported Property Damage class as "[a]ll owners of real property" in those locations while the purported Medical Monitoring Class is defined as residents near Allentown, Pennsylvania. Compl. ¶ 206(c),(e). These additional subclasses expand the overall purported class size.

Proximity Tool available on its website, hundreds of thousands of people reside within a five-mile radius of ACS's facilities identified in plaintiffs' Complaint.[6] *Id*. ¶ 71.

| U.S. Environmental Protection Agency, Demographics Proximity Tool (2024) | |
|---|---|
| ACS Location | Population in a 8km Radius (approx. 4.97 miles) |
| Grimes, Iowa | 96,216 |
| Fort Myers, Florida | 137,286 |
| Temple Terrace, Florida | 182,344 |
| Tiffin, Ohio | 24,869 |
| Houston, Texas | 355,098 |
| Zelienople, PA | 42,103 |

Declaration of Varun Aery ¶¶ 5-6.

Because the Complaint identifies purported classes that total in the thousands of individuals, CAFA's numerosity requirement is met. *See, e.g.*, *In re Processed Egg Prods. Antitrust Litig.*, 284 F.R.D. 278, 289 (E.D. Pa. 2012) (complaint that alleged "thousands" of class members satisfied numerosity requirement for class certification); *Jurek v. Dickinson Coll.*, No. 1:24CV408, 2024 WL 4536947, at *2 (M.D. Pa. Oct. 21, 2024) (same).

### C. The Amount-in-Controversy Exceeds $5,000,000.

35.     Under CAFA, "the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs." 28 U.S.C.A. § 1332(d)(6). A notice of removal "need not contain evidentiary submissions," but merely a "plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart*, 574 U.S. at 81 (citing 28 U.S.C. § 1446(a)). Where, as here, in "a toxic tort action for medical monitoring which includes the claims of potentially thousands of" class members, the amount in controversy will "likely meet or exceed $5,000,000, exclusive of

---

[6] "The Demographics Proximity Tool (ProxTool) is used to characterize the size and demographic make-up of populations living within a user specified area around facilities or other locations of interest. User inputs to the tool include an ID for each facility (or location), the latitude and longitude for each facility (or location), and the radius of the circular area of interest surrounding each facility (or location) in kilometers (km) up to 50 km (e.g., 5 km radius)." EPA, *Demographics Proximity Tool*, (Dec. 17, 2024) https://www.epa.gov/fera/demographics-proximity-tool. The Court can take judicial notice of undisputed facts. *See Warfield Phila., L.P. v. Nat'l Passenger R.R.*, No. CIV.A. 09-1002, 2009 WL 4043112, at *5 n.8 (E.D. Pa. Nov. 20, 2009) (court taking judicial notice of population); *see also Smith v. Radian Settlement Servs., Inc.*, 717 F. Supp. 3d 415, 421 n.36 (M.D. Pa. 2024) (courts may take judicial notice of information from a government website).

interests or costs." *Anthony*, 535 F. Supp. 2d at 516. Not only does this class action seek medical monitoring costs for potentially thousands of individuals in Pennsylvania, but each purported class member also seeks "nominal and compensatory damages . . . for physical injury, property diminution, loss of use and enjoyment, [] other economic . . . losses," punitive damages, "attorneys' fees, costs, and litigation expenses," and other relief.  Compl. pp. 51-52. As detailed in paragraphs 26 and 29 through 32, individual plaintiffs asserting the types of claims and alleged injuries involved in this case regularly seek compensatory and punitive damages well in excess of $5,000,000. Thus, a class action consisting of thousands of allegedly similarly situated individuals clearly satisfies the amount-in-controversy requirement under CAFA.

## V.  PROCEDURAL REQUIREMENTS FOR REMOVAL

36.    ACS removed this action pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453.

37.    The Court of Common Pleas of Philadelphia County is located within the Eastern District of Pennsylvania. Therefore, removal to this Court satisfies the venue requirements of 28 U.S.C. § 1446(a).

38.    The consent of an unknown fictitious defendant is not required for removal. *Balazik v. Cnty. of Dauphin*, 44 F.3d 209, 213 n.4 (3d Cir. 1995) ("The unanimity rule may be disregarded where: (1) a non-joining defendant is an unknown or nominal party; or (2) where a defendant has been fraudulently joined"); *Bonilla-Paul v. Walmart, Inc.*, No. CV 19-4079, 2019 WL 13071987, at *1 n.1 (E.D. Pa. Nov. 22, 2019) ("John Does are precisely the type of 'unknown' defendants for which obtaining consent is not required.").

39.    A copy of the written notice required by 28 U.S.C. § 1446(d) is attached as Exhibit P. It will be promptly filed in the Court of Common Pleas of Philadelphia County, and promptly served on counsel for plaintiffs and the class action.

40.    ACS does not waive any defenses and expressly reserves its right to raise any and all defenses in subsequent proceedings.

14

41.     If any question arises as to the propriety of this removal, ACS requests the opportunity to present written and oral argument and evidence in support of removal.

## VI.    **CONCLUSION**

42.     For the foregoing reasons, ACS removes this lawsuit to this Court pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453 (and any other applicable laws).

Dated: July 11, 2025

Robert E. Johnston, Esq. (*pro hac vice app. anticipated*)
rjohnston@hollingsworthllp.com
William J. Cople III, Esq. (*pro hac vice app. anticipated*)
wcople@hollingsworthllp.com
Andrew L. Reissaus, Esq. (*pro hac vice app. anticipated*)
wcople@hollingsworthllp.com
Aleksandra Rybicki, Esq. (*pro hac vice app. anticipated*)
arybicki@hollingsworthllp.com
HOLLINGSWORTH LLP
1350 I Street, N.W.
Washington, D.C. 20005
Telephone: (202) 898-5800
Fax: (202) 682-1639

*Counsel for Defendant American Contract Systems, Inc.*

Respectfully submitted,

/s/ Matthew Junk
Matthew Junk, Esq. (Bar ID 86089)
Tyson & Mendes
919 Conestoga Rd.
Building Three, Suite 210
Bryn Mawr, PA 19010
Phone: (267) 215-3765
Fax: (267) 376-9863
mjunk@tysonmendes.com

15

Case 2:25-cv-01552-RJC   Document 1   Filed 07/11/25   Page 16 of 16

<u>**CERTIFICATE OF SERVICE**</u>

I certify that on this 11th day of July 2025, I electronically filed the foregoing American Contract Systems, Inc.'s Notice of Removal with the Clerk of the Court by using the CM/ECF system. I further certify that a true and correct copy of American Contract Systems, Inc.'s Notice of Removal was caused to be served upon the following counsel via electronic mail and United States mail:

Edward J. Ciarimboli, Esq.
FELLERMAN & CIARIMBOL LAW, P.C.
183 Market Street, Suite 200
Kingston, PA 18704
570-718-1444

Gregory A. Cade
Kevin B. McKie
Gary A. Anderson
Dr. Corey Masuca
Jordan A. Cade
ENVIRONMENTAL LITIGATION GROUP, P.C.
2160 Highland Ave. S.
Birmingham, AL 35205
T: (205) 328-9200
F: (205) 328-9456
GregC@elglaw.com
Kmckie@elglaw.com
Gary@elglaw.com
Cmasuca@elglaw.com
Jordan@elglaw.com

*Counsel for Plaintiffs and the Putative Class*

<u>/s/ Matthew Junk</u>
Matthew Junk, Esq. (Bar ID 86089)
Tyson & Mendes, LLP
919 Conestoga Rd.
Building Three, Suite 210
Bryn Mawr, PA 19010
Phone: (267) 215-3765
Fax: (267) 376-9863
mjunk@tysonmendes.com

*Counsel for Defendant American Contract Systems, Inc.*

16